1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   EARNEST CASSELL WOODS, II,

11          Plaintiff,               No. CIV S-04-1225 LKK GGH P

12      vs.

13   TOM L. CAREY, et al.,

14          Defendants.             FINDINGS & RECOMMENDATIONS

15   _____/

16   I.  Introduction

17          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

18   42 U.S.C. § 1983.  Pending before the court is defendants' summary judgment motion filed

19   December 16, 2005.  On January 10, 2006, plaintiff filed an opposition to defendants' motion.

20   The opposition cannot be considered as evidence because it is not verified.  Fed. R. Civ. P. 56(e).

21   In addition, the exhibits attached to the opposition are not relevant to the claims on which this

22   action is proceeding.  Accordingly, the court will consider plaintiff's verified amended complaint

23   and the exhibits attached thereto as his opposition.  McElyea v. Babbitt, 833 F.2d 196, 197 (9th

24   Cir. 1987) (a verified complaint may be considered as an affidavit in opposition to summary

25   judgment if it is based on personal knowledge and sets forth specific facts admissible in

26   evidence).

1    After carefully considering the record, the court recommends that defendants'

2    motion be granted in part and denied in part.

3    II.  Summary Judgment Standards Under Rule 56

4    Summary judgment is appropriate when it is demonstrated that there exists "no

5    genuine issue as to any material fact and that the moving party is entitled to a judgment as a

6    matter of law."  Fed. R. Civ. P. 56(c).

7    Under summary judgment practice, the moving party

8    always bears the initial responsibility of informing the district court
     of the basis for its motion, and identifying those portions of "the
9    pleadings, depositions, answers to interrogatories, and admissions
     on file, together with the affidavits, if any," which it believes
10   demonstrate the absence of a genuine issue of material fact.

11   Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

12   P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

13   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

14   depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

15   should be entered, after adequate time for discovery and upon motion, against a party who fails to

16   make a showing sufficient to establish the existence of an element essential to that party's case,

17   and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.

18   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

19   necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

20   should be granted, "so long as whatever is before the district court demonstrates that the standard

21   for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at

22   2553.

23   If the moving party meets its initial responsibility, the burden then shifts to the

24   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

25   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

26   (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

1  not rely upon the allegations or denials of its pleadings but is required to tender evidence of

2  specific facts in the form of affidavits, and/or admissible discovery material, in support of its

3  contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

4  106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

5  material, i.e., a fact that might affect the outcome of the suit under the governing law, see

6  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

7  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

8  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

9  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

10         In the endeavor to establish the existence of a factual dispute, the opposing party

11  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

12  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

13  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

14  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

15  genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

16  56(e) advisory committee's note on 1963 amendments).

17         In resolving the summary judgment motion, the court examines the pleadings,

18  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

19  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

20  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

21  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

22  at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

23  obligation to produce a factual predicate from which the inference may be drawn.  See Richards

24  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

25  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

26  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

3

1  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2  'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

3          On December 14, 2004, the court advised plaintiff of the requirements for

4  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v.

5  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409,

6  411-12 (9th Cir. 1988).

7  III. Discussion

8          *Legal Standard for Eighth Amendment Claim re: Inadequate Dental Care*

9          In order to state a § 1983 claim for violation of the Eighth Amendment based on

10  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

11  deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.

12  285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively

13  serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter,

14  501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.

15  1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference."

16  Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

17          A serious medical need exists if the failure to treat a prisoner's condition could

18  result in further significant injury or the unnecessary and wanton infliction of pain. Indications

19  that a prisoner has a serious need for medical treatment are the following: the existence of an

20  injury that a reasonable doctor or patient would find important and worthy of comment or

21  treatment; the presence of a medical condition that significantly affects an individual's daily

22  activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900

23  F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

24  (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

25  grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

26  \\\\\\

1    In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

2 defined a very strict standard which a plaintiff must meet in order to establish "deliberate

3 indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

4 However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

5 which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979.

6 Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

7 should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

8    It is nothing less than recklessness in the criminal sense––a subjective standard––

9 disregard of a risk of harm of which the actor is actually aware. Id. at 838-842, 114 S. Ct. at

10 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn

11 that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837,

12 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk

13 of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at

14 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his

15 knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. at 1981. If the risk was

16 obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S. Ct. at

17 1981. However, obviousness per se will not impart knowledge as a matter of law.

18    Also significant to the analysis is the well established principle that mere

19 differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

20 Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,

21 662 F.2d 1337, 1344 (9th Cir. 1981).

22    Moreover, a physician need not fail to treat an inmate altogether in order to violate

23 that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

24 1989). A failure to competently treat a serious medical condition, even if some treatment is

25 prescribed, may constitute deliberate indifference in a particular case. Id.

26 \\\\\

5

1    Additionally, mere delay in medical treatment without more is insufficient to state

2  a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766

3  F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is

4  no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing

5  Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-

6  1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends

7  to provide additional support for a claim of deliberate indifference; however, it does not end the

8  inquiry. McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the

9  medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

10  needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

11  the defendant." McGuckin, 974 F.2d at 1061.

12    *Analysis*

13    The defendants in this action are Warden Carey and Administrative Appeals

14  Coordinators Dickinson and Cervantes. This action is proceeding on the amended complaint

15  filed October 28, 2004. The amended complaint contains two legal claims: 1) defendants

16  violated the Eighth Amendment by providing plaintiff with inadequate dental care with respect to

17  a broken tooth and broken partials; and 2) the inadequacies of the administrative appeal process

18  violated plaintiff's right to due process. Plaintiff seeks monetary and injunctive relief.

19    Defendants first move to dismiss the Eighth Amendment claims against defendant

20  Warden Carey on grounds that plaintiff has not linked him to any of the alleged deprivations. In

21  the amended complaint, plaintiff alleges that he was denied adequate dental care with respect to

22  his broken tooth and broken partial from the time he arrived at California State Prison-Solano on

23  August 15, 2002, until September 2004. In his declaration attached to defendants' summary

24  judgment motion, defendant Carey states that during the relevant time period, he had no

25  conversations with plaintiff regarding the delay of dental treatment. Carey Decl., ¶ 4. Defendant

26  Carey also states that during the relevant time period, he did not review plaintiff's administrative

1  appeal. Id. Defendant Carey also states that he has no personal knowledge of the allegations

2  made in plaintiff's complaint. Id., ¶ 6.

3          The Civil Rights Act under which this action was filed provides as follows:

4          Every person who, under color of [state law] . . . subjects, or causes
           to be subjected, any citizen of the United States . . . to the
5          deprivation of any rights, privileges, or immunities secured by the
           Constitution . . . shall be liable to the party injured in an action at
6          law, suit in equity, or other proper proceeding for redress.

7  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

8  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

9  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

10  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

11  meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

12  omits to perform an act which he is legally required to do that causes the deprivation of which

13  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

14          Moreover, supervisory personnel are generally not liable under § 1983 for the

15  actions of their employees under a theory of respondeat superior and, therefore, when a named

16  defendant holds a supervisorial position, the causal link between him and the claimed

17  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

18  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S.

19  941 (1979).  Vague and conclusory allegations concerning the involvement of official personnel

20  in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th

21  Cir. 1982).

22          "A supervisor may be liable if there exists either (1) his or her personal

23  involvement in the constitutional deprivation, or (2) a sufficient causal connection between the

24  supervisor's wrongful conduct and the constitutional violation."  Hansen v. Black, 885 F.2d 642,

25  646 (9th Cir. 1989).  "Supervisory liability exists even without overt personal participation in the

26  offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a

7

1    repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"

2    Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991)(quoting Hansen v. Black,

3    885 F.2d at 646).

4            Plaintiff's amended complaint contains no specific allegations against defendant

5    Carey.  While plaintiff alleges that on September 22, 2004, dental staff told plaintiff that Solano

6    Prison does not repair metal partials, plaintiff provides no evidence demonstrating that defendant

7    Carey implemented the policy that prohibits the repair of dentures.  Defendant Carey's

8    statements in his declaration that he was unaware of plaintiff's allegations also indicate that

9    plaintiff was denied dental care pursuant to a policy implemented by defendant.  Accordingly, the

10   court recommends that defendant Carey be granted summary judgment in his individual capacity.

11           Defendants also argue that defendant Carey should be granted summary judgment

12   with respect to plaintiff's due process claim on grounds that plaintiff has no right to an

13   administrative grievance procedure.  Ramirez v. Galaza, 334 F.3d 850, 860 (2003) (inmates lack

14   a separate constitutional entitlement to a specific prison grievance procedure) (citing Mann v.

15   Adams, 855 F.2d 939, 640 (9th Cir. 1988)).  Because plaintiff has no right to a grievance

16   procedure, defendant Carey should be granted summary judgment with respect to this claim in

17   his individual capacity.

18           Defendant Carey was also sued in his official capacity insofar as plaintiff

19   requested injunctive relief, which he did.  Of course, the respondeat superior no liability rule

20   applies only to actions for damages against an official in his individual capacity.  If injunctive

21   relief is sought, plaintiff does not have to demonstrate that the named official had personal

22   involvement.  Just as it is not necessary to allege Monell[1] policy grounds when suing a state or

23   municipal official in his or her official capacity for injunctive relief related to a procedure of a

24   state entity, Chaloux v. Killeen, 886 F.2d 247 (9th Cir. 1989), it follows that it is not necessary to

25

26   _____

        [1]  Monell v. Department of Social Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).

allege the personal involvement of a state official when plaintiffs are attacking a state procedure on federal grounds that relates in some way to the job duties of the named defendant.  All that is required is that the complaint name an official who could appropriately respond to a court order on injunctive relief should one ever be issued.  Harrington v. Grayson, 764 F. Supp. 464, 475-477 (E.D.Mich. 1991); Malik v. Tanner, 697 F. Supp. 1294, 1304 (S.D.N.Y. 1988). ("Furthermore, a claim for injunctive relief, as opposed to monetary relief, may be made on a theory of respondeat superior in a § 1983 action."); Fox Valley Reproductive Health Care v. Arft, 454 F. Supp. 784, 786 (E.D. Wis. 1978).  See also, Hoptowit v. Spellman, 753 F.2d 779 (9th Cir. 1985), permitting an injunctive relief suit to continue against an official's successors despite objection that the successors had not personally engaged in the same practice that had led to the suit.

Defendants do not address the official capacity/injunctive relief claims, and therefore, Carey remains in the lawsuit in his official capacity.

Defendants next move for summary judgment as to defendant Dickinson on grounds that this defendant was not the appeals coordinator who reviewed the at-issue appeals originally submitted on November 17, 2003, and December 3, 2003, regarding the broken tooth and broken partials.  In his declaration attached to defendants' motion, defendant Dickinson states that at the time plaintiff filed his administrative appeals regarding dental care, he was assigned to deal with appeals submitted by inmates whose last two CDC numbers ended between 00-50.  Dickinson Declaration, ¶ 5.  Defendant Dickinson was not the appeals coordinator assigned to review plaintiff's appeals submitted on November 17, 2003, and December 3, 2003. Id.

In the amended complaint, plaintiff states that there are two appeals coordinators at California State Prison-Solano and he could not tell which one was involved with his claims. Amended Complaint, p. 2.  Because it is clear that defendant Dickinson was not involved in plaintiff's appeals regarding dental care, he should be granted summary judgment with respect to

plaintiff's Eighth Amendment claim. Defendant Dickinson should also be granted summary

judgment with respect to plaintiff's due process claim on grounds that plaintiff has no right to an

administrative grievance procedure. Ramirez v. Galaza, 334 F.3d 850, 860 (2003).

Plaintiff alleges that defendant Cervantes denied the two administrative appeals

regarding inadequate dental care. The facts regarding defendant Cervantes' involvement in

plaintiff's administrative appeals are undisputed.

Plaintiff filed administrative grievances on November 27, 2003, and December 3,

2003, alleging inadequate dental care. In the November 27, 2003, grievance, plaintiff stated that

on October 24, 2002, he submitted an application to see the dentist based on his partial being

broken and had still not seen a dentist. Amended Complaint, Exhibit C. The informal response

by E. Gonnelle dated December 1, 2003, stated that on October 30, 2002, plaintiff was seen for

an extraction and his name was removed from the list of inmates waiting to see the dentist. Id.

The response stated that if plaintiff wanted to see the dentist he would have to submit another

7302 form to have his name re-entered on the list. Id.

In his December 4, 2003, appeal from the informal level appeal, plaintiff stated

that on October 24, 2002, he submitted a 7302 form for the repair of his broken partial which he

could not wear anymore. Id. Plaintiff stated that he was seen for the extraction on October 30,

2002, on an emergency basis and not based on a request contained in a 7302 form. Id.

On December 4, 2003, defendant Cervantes returned this appeal to plaintiff

because he had not attempted to resolve the problem at the informal level with the medical

appeals analyst in accordance with Cal. Code Regs. tit. 15, § 3084.3(c)(3). Cervantes decl.,

exhibit 2. The response goes on to state, "Forward 602 directly to medical appeals analyst for

informal level review by dental staff." Id.

In the complaint, plaintiff alleges that he then submitted his informal appeal for

direct review, but on February 19, 2004, received a Medical Appeals Screening Form stating that

the informal response was already completed:

> Informal Response already completed.  First Level Appeal requests must be processed through the Inmate Appeals Office (not Medical Appeal Office) initially for assignment of a log number.  After the Inmate Appeals Office assigns a log number, they will then forward your appeal back to our office for processing.

Amended Complaint, Exhibit F.

Plaintiff filed his second at-issue grievance on December 3, 2003, stating that on December 2, 2003, he broke his tooth.  Amended Complaint, Exhibit D.  Plaintiff requested that he be seen immediately by the dental staff for repair of his tooth.  Id.  The informal response dated December 31, 2003, stated that there was no record of plaintiff formally requesting dental care by way of a 7302 form.  Id.  The response advised plaintiff to submit a 7302 form but that if he had a dental emergency, he should have a Correctional Officer call the dental clinic for an appointment.  Id.

Plaintiff appealed the informal response on January 8, 2004, stating that his tooth was broken "based on dental not calling me in over a year."  Id.  Plaintiff stated that he had filed numerous requests for dental care based on his broken dentures.  Id.

On February 20, 2004, defendant Cervantes returned this appeal to plaintiff on grounds that too much time had elapsed in that he failed to file an appeal within fifteen working days pursuant to Cal. Code Regs. tit. 15, § 3084.3(c)(6).  Cervantes decl., exhibit 3.  The response concluded,

> Appeals officer received your 602 requesting formal level on 2-20-04.  The informal level review was completed on 12-31-03.  Your appeal is rejected due to untimely filing.  Please start is [sic] new.  Cont. 602 if you are still being denied dental care.

Id.

At the outset, the court finds that plaintiff's broken tooth and broken partial denture constituted serious dental needs.  The next step of the analysis is whether defendant Cervantes acted with deliberate indifference when he rejected these appeals.

Defendants sued in their individual capacity must be alleged to have: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed

1   to act to prevent them; or implemented a policy that repudiates constitutional rights and was the

2   moving force behind the alleged violations.  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th

3   Cir. 1991); Hansen v. Black, 885 F.2d 642 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040 (9th Cir.

4   1989).  "Although a § 1983 claim has been described as 'a species of tort liability,' Imbler v.

5   Pachtman, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L.Ed.2d 128, it is perfectly clear that not

6   every injury in which a state official has played some part is actionable under that statute."

7   Martinez v. State of California, 444 U.S. 277, 285, 100 S. Ct. 553, 559 (1980).  "Without

8   proximate cause, there is no § 1983 liability."  Van Ort v. Estate of Stanewich, 92 F.3d 831, 837

9   (9th Cir. 1996).

10          The search, which was performed in accordance with this constitutionally valid
            strip search policy, was subsequently ratified by the School Board when Mr.
11          Williams filed a grievance.  Therefore, Williams' only grasp at evoking municipal
            liability under § 1983 is to show that this subsequent ratification is sufficient to
12          establish the necessary causation requirements.  Based on the facts, the Board
            believed Ellington and his colleagues were justified in conducting the search of
13          Williams.  There was no history that the policy had been repeatedly or even
            sporadically misapplied by school board officials in the past.  Consequently, the
14          School Board cannot be held liable for the ratification of the search in question,
            because this single, isolated decision can hardly constitute the "moving force"
15          behind the alleged constitutional deprivation.

16  Williams v. Ellington, 936 F.2d 881, 884-885 (9th Cir. 1991).

17          This court is unwilling to adopt a rule that anyone involved in adjudicating

18  grievances after the fact is per se potentially liable under a ratification theory.  However, this is

19  not to say that persons involved in adjudicating administrative disputes, or persons to whom

20  complaints are sometimes made can never be liable under a ratification theory.  If, for example, a

21  reviewing official's rejections of administrative grievances can be construed as an automatic

22  whitewash, which may have led other prison officials to have no concern of ever being

23  reprimanded, a ratifying official may be liable for having put a defective policy in place.

24          Defendant Cervantes denied both of plaintiff's appeals on procedural grounds.

25  Defendant denied the first appeal based on plaintiff's failure to attempt to resolve the problem at

26  the informal level.  However, plaintiff's appeal form indicated that he had followed the appeal

1  procedures, he had a serious dental condition, and clearly explained how his name had been

2  improperly removed from the dental list.  Defendant denied the second appeal because it was

3  untimely.  Plaintiff's appeal form indicated that he signed it within the time limits, that he had a

4  serious dental need and that his previous request for dental care had been ignored.

5          Defendant Cervantes' denial of plaintiff's appeals, under the circumstances

6  described above, can reasonably be interpreted as a ratification of a policy to provide inadequate

7  dental care.  Defendant's responses to these appeals indicate an unwillingness to respond to

8  legitimate complaints regarding inadequate dental care.  Accordingly, defendant Cervantes

9  should be denied summary judgment as to plaintiff's Eighth Amendment claim.

10         Defendants also argue, without any analysis, that defendant Cervantes is entitled

11  to qualified immunity with respect to this claim.

12         The determination of whether a prison official is entitled to qualified immunity is

13  a two-step test.  Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001).  In the first step, the

14  court views the record in the light most favorable to the party asserting injury to determine

15  whether the officer's conduct violated a constitutional right.  Id.  If the plaintiff establishes the

16  violation of a constitutional right, the court next considers whether that right was clearly

17  established at the time the alleged violation occurred.  Id.  The contours of the right must have

18  been clear enough that a reasonable officer would have understood that what he was doing

19  violated that right.  See Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987).

20         As discussed above, the court finds that defendant Cervantes' conduct violated

21  plaintiff's Eighth Amendment right to adequate dental care.  At the time the alleged violations

22  occurred, plaintiff had a clearly established right to adequate dental care.  The issue is would a

23  reasonable officer have understood that denying plaintiff's administrative grievances which

24  raised the claims of inadequate dental care violated that right.

25         Were it clear from the record that plaintiff did not follow the grievance

26  procedures, the court would find that a reasonable officer would have believed that denying

1  plaintiff's grievances did not violate his Eighth Amendment rights.  Policies requiring inmates to

2  file timely grievances and to first attempt to resolve grievances regarding inadequate dental care

3  with the dental staff makes sense.  However, as discussed above, the face of plaintiff's grievances

4  indicate that he did follow the grievance procedures.  Moreover, plaintiff's grievances alleged

5  that he was not receiving dental care for serious dental needs.  Based on these circumstances, the

6  court cannot find that a reasonable officer would have believed that denying plaintiff's

7  grievances did not violate the Eighth Amendment.  Accordingly, defendant Cervantes should not

8  be granted summary judgment based on qualified immunity.

9        However, defendant Cervantes should be granted summary judgment with respect

10 to plaintiff's due process claim on grounds that plaintiff has no right to an administrative

11 grievance procedure.  Ramirez v. Galaza, 334 F.3d 850, 860 (2003).

12       Defendants also move for summary judgment to the extent plaintiff is making a

13 claim for deprivation of property.  Plaintiff alleges that one of his teeth, which included a gold

14 bicuspid crown, was extracted.  Plaintiff alleges that prison officials told him that the gold crown

15 would be sent to his nearest relative.  Plaintiff alleges that his nearest relative did not receive the

16 crown.

17       Defendants correctly argue that plaintiff has failed to link any of the named

18 defendants to this alleged deprivation.  See Monell v. Department of Social Servs., 436 U.S. 658

19 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  Accordingly, defendants should be granted

20 summary judgment as to this claim.

21       Accordingly, IT IS HEREBY RECOMMENDED that defendants' December 16,

22 2005, summary judgment motion be denied as to plaintiff's claim that defendant Cervantes

23 violated his Eighth Amendment right to adequate dental care by denying his administrative

24 grievances; defendants' motion should be granted in all other respects.

25       These findings and recommendations are submitted to the United States District

26 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

14

1  days after being served with these findings and recommendations, any party may file written

2  objections with the court and serve a copy on all parties.  Such a document should be captioned

3  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

4  shall be served and filed within ten days after service of the objections.  The parties are advised

5  that failure to file objections within the specified time may waive the right to appeal the District

6  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

7  DATED:   3/6/06

8

9                                          /s/ Gregory G. Hollows

10                                         _____
                                           GREGORY G. HOLLOWS
                                           UNITED STATES MAGISTRATE JUDGE

   ggh:kj
11 wo1225.sj

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26