1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EARNEST CASSELL WOODS, II,              No.  2:04-cv-1225 LKK AC P

12                Plaintiff,

13        v.                                 ORDER and

14   TOM L. CAREY, Warden, et al.,           FINDINGS and RECOMENDATIONS

15                Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this action filed

18   pursuant to 42 U.S.C. § 1983.  Defendants Carey and Cervantes have moved to dismiss the

19   complaint in part, arguing that plaintiff failed to exhaust completely the claims contained in his

20   December 3, 2003 grievance.  Plaintiff opposes the motion, and also moves for judicial notice as

21   well as for an expert witness.  For the reasons outlined below, the undersigned denies the motions

22   for judicial notice and for an expert witness, and recommends that the court deny the motion to

23   dismiss.

24        **Background**

25        Plaintiff is a state prisoner.  In 2002, he was housed at Richard J. Donovan Correctional

26   Institute.  Amended Complaint, ECF No. 15 (the "Complaint"),¶ 7.[1]  On July 31, 2001, plaintiff

27   _____

28   [1]   The Amended Complaint is not available electronically on the court's docket.  A copy of the
     operative Amended Complaint is attached as Exhibit A to defendants' Motion to Dismiss,

1   filed an inmate appeal form, asking to be seen by a dentist immediately.  ECF No. 15, Ex. A.  The

2   request was denied, because plaintiff's description of his need for care was not among those

3   problems warranting immediate care under state regulations.  Id.

4        On August 15, 2002, plaintiff was transferred to California State Prison – Solano ("CSP-

5   Solano").  Complaint, ¶ 8.  On October 13, 2002 and October 24, 2002, plaintiff received receipts

6   acknowledging his requests for dental care, and advising him that he would be provided with care

7   in chronological order.  Complaint, Exhibit B.

8        The court previously ordered the complaint served on three defendants: Tom Carey; T.

9   Dickenson, and Cervantes.  See Order filed Nov. 29, 2004, ECF No. 16.  Defendants

10   subsequently filed an answer to the complaint on April 8, 2005.  ECF No. 21.

11        On September 28, 2006, the court granted in part defendants' motion for summary

12   judgment.  ECF No. 108.  As a result, the only remaining defendants in the action were Carey, in

13   his official capacity and as to plaintiff's request for injunctive relief only, and Cervantes.  Id.; see

14   also ECF No. 67 (findings and recommendations entered March 6, 2006).  The court subsequently

15   granted in part and denied in part defendants' motion to dismiss for failure to exhaust.  ECF No.

16   162.  After plaintiff was transferred to another prison, the court dismissed plaintiff's claim for

17   injunctive relief (thus removing defendant Carey from the action).  ECF Nos. 206, 209, 211.

18        On July 9, 2012, the Court of Appeals for the Ninth Circuit reversed this court's orders on

19   summary judgment, and the motion to dismiss.  See ECF Nos. 260, 261.  As this court

20   understands the Court of Appeals' orders, defendants Carey and Cervantes remain in this action.

21   ECF No. 260, n.1 (plaintiff did not appeal court's decision granting summary judgment to

22   defendant Dickinson).

23        *The November Grievance*

24        On November 17, 2003, plaintiff filed an inmate appeal form, or 602, asking to be seen in

25   dental immediately (the "November Grievance").  Complaint, ¶ 10, Exhibit C; Motion to

26   Dismiss, Ex. B, Declaration of Santos Cervantes ("Cervantes Decl."), ECF No. 269-4, Ex. 1.[2]

27   _____

available at ECF No. 269-3.

28   [2]   Defendants' request for judicial notice (ECF No. 269-2) is granted.

Plaintiff wrote that he had submitted an application to see a dentist on October 24, 2002 based on his "partial" being broken, and had yet to see a dentist.  Id.

The November Grievance was received on November 21, partially granted by staff member Ganella and returned to plaintiff on December 1, 2003.  Id.  The informal response by staff reads that plaintiff was seen for an extraction on October 20, 2002, and that plaintiff's name was then removed from the wait list as "treatment had been rendered.  If you wish to be seen again, you must submit another 7302 to have your name re-entered on the list."  Id.

Plaintiff sought review of the informal staff response at the formal level.  Id.  His explanation, submitted December 4, 2003, reads that he had submitted a 7302 on October 24, 2002 for the repair of the broken partial, and that the visit on October 30, 2002 was for an emergency extraction.  Id.

Plaintiff's formal level appeal was received by defendant on December 15, 2003, at which time defendant denied the appeal as untimely.  Id.; Cervantes Decl. ¶¶ 6-7 (explaining notations at bottom of form).  There is no "Received" stamp on the appeal from the CSP/Solano Appeals Office.

The screening form rejecting the formal level appeal is not attached either to the Complaint or to the Cervantes Declaration.  According to defendant Cervantes, he denied the appeal as untimely because plaintiff originally sought dental care in October 2002, but did not file a 602 until over a year later, in November 2003.  Cervantes Decl., ¶ 7.

*The December Grievance*

On December 3, 2003, plaintiff filed a 602 asking to be seen immediately at dental, and that they repair his broken tooth (the "December Grievance").  Complaint, Ex. D; Cervantes Decl., Ex. 3, p.1.  Plaintiff wrote that on December 2, 2003, he broke his tooth while eating.  Id.

The December Grievance was received on December 10, and returned to plaintiff on December 31, 2003 by staff member Stanfield.  Complaint, Ex. D; Cervantes Decl. Ex. 3, p.1.  The informal response reads that "[w]e have no record that you have formally requested dental care by submitting a 7302.  Please do so, and your name will be entered on the dental treatment list. . . ."  Id.

3

1    Plaintiff sought review of the informal staff response at the formal level.  Id.  His

2    explanation, signed as submitted on January 8, 2004, reads that he is dissatisfied because "my

3    tooth is broken based on dental not calling me in over a year.  I have filed numerous requests. . .

4    ."  Id.

5    The 602 is stamped as received by the CSP/Solano Appeals Office on February 20, 2004.

6    Id.; see also Cervantes Decl. ¶¶ 11-13.  Defendant Cervantes screened out the December

7    Grievance as untimely because, although the request for formal review is dated January 8, 2004,

8    it was not received by the appeals office until February 20, 51 days after completion of the

9    informal level review.  Complaint, Ex. G; Cervantes Decl. Ex. 3, p. 2; Cervantes Decl. ¶¶ 11-12.

10   The comments further direct plaintiff to start a new 602 if he is still being denied dental care.  Id.

11   The screening form also reads: "Note: This screening action may not be appealed unless

12   you allege that the above reason is inaccurate.  In such case, please return this form to the

13   Appeals Coordinator with the necessary information."  Complaint, Ex. G, p. 1; Cervantes Decl.

14   Ex. 3, p. 2.

15   *Additional Screenings*

16   The record currently includes at least two other screening forms which do not, on their

17   face, refer to any particular 602 submitted by the plaintiff.

18   The first is dated December 4, 2003, and is signed by defendant Cervantes (the

19   "December Screening").  Complaint, Ex. E; Cervantes Decl., ¶ 9 (noting the appropriate

20   corresponding 602 is not attached to plaintiff's complaint); Ex. 27.  The issue of the appeal is

21   identified as Dental.  Id.  The December Screening rejects an appeal on grounds that plaintiff had

22   not attempted to resolve the problem at the informal level with the Medical Appeals Analyst.  Id.

23   Defendant's comments read: "Forward 602 directly to Medical Appeals Analyst for informal

24   level review by dental staff."  Id.

25   The second screening form is dated February 19, 2004, and is signed on behalf of Ms. M.

26   Holiday, Medical Appeals Analyst (the "February Screening").  Complaint, Ex. F.  The form

27   reads that a 602 appeal has been received in the Medical Services Appeal Office; however, it

28   cannot be processed because

4

1    Informal Response already completed.  First Level Appeal Requests
2    must be processed through the Inmate Appeals Office (not Medical
     Appeal Office) initially for assignment of a log number.  After the
3    Inmate Appeals Office assigns a log number, they will then forward
     your appeal back to our office for processing.

4    Id.

5        *Plaintiff's Chronology*

6        Plaintiff's version of these events appears to be that he submitted the December Grievance

7    to Cervantes, who instructed him in the December Screening to route the 602 to the Medical

8    Appeals Analyst.  See Complaint, ¶¶ 12-15; Opposition, ECF No. 224 at 4; Objection, ECF No.

9    275 at 5.  After plaintiff received the 602 back from the Medical Appeals Analyst (the February

10   Screening), he refilled it with Cervantes, who rejected the appeal as untimely.  Complaint, ¶¶ 11-

11   15; ECF No. 272 at 4; ECF No. 275 at 5.

12       Plaintiff sometimes appears to conflate the November Grievance with the December

13   Grievance.  For example, the Complaint is unclear as to which appeal plaintiff is referencing.

14   See, e.g., Complaint at ¶¶ 10-12 (plaintiff appears to allege that staff member Stanfield returned

15   the November Grievance to plaintiff, while the record only reflects that staff member Stanfield

16   returned the December Grievance).  Also, plaintiff's opposition to the motion clearly confuses the

17   chronology.  It is clear however, that plaintiff alleges he routed his grievances as directed, and in

18   a timely manner.  See also ECF No. 228 at 49-50 (letter from plaintiff to defendant Carey alleging

19   that defendant Cervantes will not allow plaintiff to process his appeals).

20       *Defendant's Chronology*

21       Defendants' version of these events differs somewhat from plaintiff's.  See Motion to

22   Dismiss, ECF 269-1 at 3:21-27.  Defendant claims that plaintiff filed the December Grievance on

23   December 3rd; was instructed on December 4th to resolve the issue informally first, and did so,

24   receiving an informal response on December 31st directing him to file a 7302.  Id.[3]

25   _____

26   [3]   In support of this chronology, defendants cite to the declaration of defendant Cervantes.
     However, the declaration does not state that defendant Cervantes issued the December Screening
27   in response to the December Grievance.  Instead, the declaration states that plaintiff has not
     submitted the grievance related to the December Screening, suggesting that the two may not be
28   related.

5

1    Defendants further allege that while plaintiff's request for formal review of the December

2    Grievance was dated January 8, 2004, "it was not **submitted** to the appeal's [sic] coordinator until

3    February 20, 2004, or *51 days later*. . . .  Defendant Cervantes is personally aware of the

4    procedures the appeals office at CSP-Solano follows for date-stamping appeals. . . .  Since the

5    602 appeals are time sensitive per [California Regulations], it is the practice and procedure of the

6    CSP-Solano appeals office to date stamp inmate appeals when they are received."  Motion to

7    Dismiss, ECF No. 269-1 at 4:3-10 (citing Cervantes Decl. at ¶ 4).

8    Defendants do not address the February Screening.  It is not clear from defendants'

9    evidence whether plaintiff did, in fact, fail to file any subsequent requests for treatment or appeals

10   of the December Grievance after February 20, 2004.[4]

11   As to plaintiff's failure to exhaust, defendants provide the declaration of N. Grannis, who

12   is the Chief of the Inmate Appeals Branch.  See Motion to Dismiss, Ex. C ("Grannis Decl."), ¶ 1.

13   Staff member Grannis declares that his office maintains records which show whether an inmate

14   grievance was received for review and answered at the Director's Level.  Id. at 4.  Grannis

15   declares that a search of his offices' records shows that from 2002 to present plaintiff did not

16   exhaust his administrative remedies regarding dental care, or defendant Cervantes' processing of

17   his appeals.  Id. at ¶ 6.  Attached to the Grannis Declaration is a spreadsheet which identifies

18   appeals with information including log number, inmate name, date received, and disposition.  Id.

19   at Ex. 1, p.2.  The only information on the spreadsheet related to subject matter comes under the

20   heading "Complaint," and includes such terms as "Complaints Against [incomplete]" or

21   "Medical."  These broad categories fail to identify the subject matter of the appeals.  Accordingly,

22   the undersigned cannot conclude from the spreadsheet that none of the listed appeals involved the

23   dental care matters at issue here.  The spreadsheet also does not appear to include those appeals

24   screened out before receiving a log number.

25   Also attached to the Motion to Dismiss is the Declaration of N. Danbacher, who is an

26

---

27   [4]  Moreover, defendants fail to explain why the November Grievance, which arrived in the CSP
     Solano Appeals Office on December 15, 2003 per defendant Cervantes' handwritten notation,

28   does not have a "Received" stamp on it.

1    appeals coordinator at CSP-Solano.  Motion to Dismiss, Exhibit D ("Danbacher Decl."), ¶ 1.

2    Staff member Danbacher also provides the court with a spreadsheet of plaintiff's appeals, both

3    those accepted and those screened out.  However, he does not affirmatively advise if plaintiff

4    filed any grievances which could have satisfied plaintiff's exhaustion requirements, instead

5    writing that certain appeals from 2006 and 2007 "may be construed as relevant."  For these

6    appeals, which began well after the time period at issue in this complaint, Danbacher attaches

7    copies of the appeals.  He includes none from the time period at issue.  The summary information

8    in Danbacher's spreadsheet, like that presented in the Grannis declaration spreadsheet, does not

9    provide a basis for determining the precise subject of any particular appeal or grievance.

10        **Discussion**

11        *Standards Governing Exhaustion of Administrative Remedies*

12        Congress "placed a series of controls on prisoner suits, constraints designed to prevent

13    sportive filings in federal court."  <u>Skinner v. Switzer</u>, 131 S.Ct. 1289, 1299 (2011).  One of these

14    constraints is the mandatory exhaustion of the correctional facilities' administrative remedies.

15    <u>See</u> 42 U.S.C. § 1997e(a); <u>Jones v. Bock</u>, 549 U.S. 199, 211 (2007) ("There is no question that

16    exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in

17    court.").

18        Exhaustion serves two purposes.  <u>Woodford v. Ngo</u>, 548 U.S. 81, 89 (2006).  First,

19    exhaustion protects administrative agency authority.  Exhaustion gives an agency an opportunity

20    to correct its own mistakes with respect to the programs it administers before it is haled into

21    federal court, and it discourages disregard of the agency's procedures.  Second, exhaustion

22    promotes efficiency. Claims generally can be resolved much more quickly and economically in

23    proceedings before an agency than in litigation in federal court.  <u>Id.</u> (internal quotation marks,

24    alteration, and citations omitted).

25        The Prison Litigation Reform Act of 1995 (PLRA) mandates that "[n]o action shall be

26    brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a

27    prisoner confined in any jail, prison, or other correctional facility until such administrative

28    remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (emphasis added).  Although "the

1   PLRA's exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle,

2   534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute.  See

3   Albino v. Baca, 697 F.3d 1023, 1030-31 (9th Cir. 2012).  As explicitly stated in the PLRA, "[t]he

4   PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'"

5   Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)); see also

6   Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot

7   be expected to use are not capable of accomplishing their purposes and so are not available.").

8   "We have recognized that the PLRA therefore does not require exhaustion when circumstances

9   render administrative remedies 'effectively unavailable.'"  Sapp, 623 F.3d at 822 (citing Nunez,

10   591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to

11   exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no

12   longer the case, then there are no 'remedies . . . available,' and the prisoner need not further

13   pursue the grievance." (alteration in original)).

14        Exhaustion, under the PLRA, is an affirmative defense.  Jones, 549 U.S. at 216.

15   Accordingly, "[t]he burden of establishing nonexhaustion therefore falls on defendants."  Wyatt

16   v. Terhune, 315 F.3d 1108, 1112 (9th Cir. 2003); accord Brown, 422 F.3d at 936 ("[D]efendants

17   have the burden of raising and proving the absence of exhaustion.") (quoting Wyatt, 315 F.3d at

18   1119) (internal quotation marks omitted).  A defendant's burden of establishing an inmate's

19   failure to exhaust is low.  See Albino, 697 F.3d at 1031.  A defendant need only show the

20   existence of remedies that the plaintiff did not use.  Id.  Relevant evidence in so demonstrating

21   would include statutes, regulations, and other official directives that explain the scope of the

22   administrative review process.  Id. at 1032.

23        Once the defense meets its burden, the burden shifts to the plaintiff to show that the

24   administrative remedies were unavailable.  See Albino, 697 F.3d at 1030-31; Hilao v. Estate of

25   Marcos, 103 F.3d 767, 778 n. 5 (9th Cir. 1996).  Affirmative actions by jail or prison staff

26   preventing proper exhaustion, even if done innocently, can make administrative remedies

27   effectively unavailable.  Id. at 1034.  For example, improper screening of an inmate's

28   administrative grievances renders administrative remedies effectively unavailable such that

8

1    exhaustion is not required under the PLRA.  Sapp, 623 F.3d at 823.  To fall within this exception,

2    a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted

3    by improper screening.  Id.  See also Nunez, 591 F.3d 1217 (inmate's untimely exhaustion

4    excused where inmate took "reasonable and appropriate steps to exhaust . . . and was precluded

5    from exhausting . . . by the Warden's mistake").

6         In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court

7    may look beyond the pleadings and decide disputed issues of fact.  Wyatt, 315 F.3d at 1119-20.

8    If the court determines to do so, the procedure becomes "closely analogous to summary

9    judgment."  Id. at 1120, n.14.  No presumption of truthfulness attaches to a plaintiff's assertions

10   associated with the exhaustion requirement.  See Ritza v. Int'l Longshoremen's and

11   Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988).   If the district court concludes that

12   the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim

13   without prejudice.  Id.

14         *The Defendant's Motion Should be Denied*

15         Defendants move to dismiss all claims related to the December Grievance, arguing that

16   plaintiff did not exhaust all his available administrative remedies.  Specifically, defendants argue

17   that plaintiff did not file a timely appeal to the first level, and that he had remaining remedies

18   after the February 20th denial which he did not exhaust.

19         Defendants have failed to carry their burden on this motion.  To begin, it is not clear on

20   the current record that plaintiff did not submit his December Grievance to the Appeals Office on

21   January 8, 2004, the day it is dated as submitted by plaintiff.  While the undersigned recognizes

22   that defendants have a policy of stamping appeals received when the grievances arrive in the

23   office, defendants have failed to establish the reliability or consistency of this policy.  The current

24   record before this court reflects that, for example, the November Grievance was not so stamped.

25         The current record also supports an inference that the December Grievance, was routed on

26   or around January 8, 2004, for whatever reason, to the Medical Appeals Analyst, who did not

27

28

9

1    return the December Grievance to plaintiff until February 19, 2004.  See Complaint, ¶¶ 12-15.[5]

2            Finally, the current record does not support defendants' allegation that plaintiff failed to

3    file any appeals of the December Grievance after February 20, 2004.  In support of counsel's

4    statement that plaintiff did not file a subsequent appeal (see Motion to Dismiss, ECF No. 269-1,

5    at 4:19-23), defendants provide two spreadsheets which list in summary fashion the appeals filed

6    by plaintiff that have either been screened out or given a log number.  None of those screened out

7    or given a log number in 2004 are attached to the log.  Instead, defendants attach appeals from

8    2006 and 2007, which appear to grieve plaintiff's allegations that defendant Cervantes is

9    preventing plaintiff from filing appeals.  While possibly relevant to plaintiff's due process claim,

10   these summaries fail to satisfy defendants' burden to establish that plaintiff did not file an appeal

11   of the February 20th screening.  See Wyatt, 315 F.3d at 1120.

12           **Plaintiff's Motions**

13           Plaintiff has moved for judicial notice (ECF No. 277), and for an expert witness (ECF No.

14   279).  Both of these motions will be denied.

15           *Request for Judicial Notice*

16           Plaintiff asks the court to take judicial notice of a 2003 memorandum regarding wait times

17   for treatment at CSP-Solano, as well as recent (2012-2013) grievances and decisions regarding

18   plaintiff's medical care.  Plaintiff fails to establish that the items are undisputed, as required under

19   Federal Rule of Evidence 201.  See ECF No. 278 at 2.  Moreover, plaintiff fails to establish that

20   any of these records are relevant to the motion to dismiss, since none speak to whether or not

21   plaintiff exhausted his administrative remedies in 2003.  The request is accordingly denied.

22           *Motion for Appointment of an Expert Witness*

23           Plaintiff moves for an expert witness "regarding his medical records and the result of the

24   deliberate indifference of dental care."  ECF No. 279 at 2.  A district court may appoint an expert,

25   though the failure to do so is not an abuse of discretion when the case does not involve complex

26   _____

27   [5]  Plaintiff's own confusion regarding the various complaints and dates prevents this court from
     determining whether defendants affirmatively prevented plaintiff from exhausting.  For the
     purposes of this motion, however, plaintiff would not need to establish that he was unable to
28   exhaust, because defendants fail to carry their burden, and the burden never shifts to plaintiff..

                                                    10

scientific evidence or issues.  See, e.g., Walker v. Am. Home Shield Long Term Disability Plan, 180 F.3d 1065, 1071 (9th Cir. 1999).  Plaintiff's conclusory statement aside, plaintiff fails to establish that an expert is necessary in this case.  See also ECF No. 261 at 4 (Court of Appeals finds that there were no complex or scientific issues present in the case, and an expert was not necessary to explain to the jury the extent of plaintiff's pain and suffering).  Plaintiff's request for an expert witness is accordingly denied.

In accordance with the above, IT IS HEREBY ORDERED THAT

1.   Plaintiff's request for judicial notice (ECF No. 277) is denied; and

2.  Plaintiff's motion for an expert witness (ECF No. 279) is denied.

IT IS HEREBY RECOMMENDED that

1.   Defendants' motion to dismiss for failure to exhaust (ECF No. 269) be denied; and

2.  The parties file any dispositive, pre-trial motions within 28 days of any order accepting these findings and recommendations, failing which, the court will issue a Further Scheduling Order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-eight days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within twenty-eight days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  June 18, 2013

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:rb/wood1225.fr

11