UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARNEST CASSELL WOODS, II, | No. 2:04-cv-1225 MCE AC P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS & RECOMMENDATIONS |
| TOM L. CAREY, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983, which proceeds on the amended complaint filed on October 28, 2004. Currently before the court are defendant's motion to enforce the settlement agreement (ECF No. 353) and plaintiff's motions for sanctions, equitable estoppel, judicial notice, an evidentiary hearing, copies, and appointment of counsel (ECF Nos. 350, 360, 361). The equitable estoppel portion of plaintiff's motion (ECF No. 360) is construed as his opposition to defendant's motion to enforce. Plaintiff has also filed objections to defendant's request to invite the third-party beneficiary to participate in the November 4, 2015 hearing (ECF No. 373), which the court will construe as a motion to recuse.

I.  Background

Both parties waived any claims of disqualification to the undersigned serving as the settlement conference judge (ECF Nos. 336, 337) and the undersigned conducted a settlement

conference in this case on August 20, 2015, during which an agreement was reached (ECF No. 352). Several weeks after the conclusion of the settlement conference, defendant filed a motion to enforce the settlement agreement in which he alleged that plaintiff was refusing to sign the written agreement memorializing the agreed-upon terms or to sign the dismissal paperwork in compliance with the oral agreement because the agreed settlement amount was insufficient. ECF No. 353.

In response to defendant's motion, the court ordered a further telephonic settlement conference. ECF No. 354. The conference was held on October 14, 2015. Id.; ECF No. 363; ECF No. 369. At the outset of the conference, the court acknowledged receipt of plaintiff's motion for sanctions, equitable estoppel, an evidentiary hearing, and judicial notice. ECF No. 369 [Transcript of October 14, 2015 hearing] at 2:24-3:2. The court received clarification from plaintiff that this motion was intended as his response to defendant's motion to enforce and, with plaintiff's consent, the motion was formally construed as an opposition to defendant's motion to enforce and the conference proceeded as a hearing on the motion to enforce. Id. at 2:24-3:25. After hearing argument on the motion, the court determined that additional information was needed regarding the ability to effect payment in accordance with the agreement in light of the third-party beneficiary's refusal to complete the necessary payee form. ECF No. 363 at 1; ECF No. 369 at 10:22-12:25. A further hearing was held on November 4, 2015, during which a representative from the California Department of Corrections and Rehabilitation (CDCR) and plaintiff's mother, Mildred McKinney,[1] were also present. ECF No. 370.

II.     Motion to Recuse

Plaintiff has filed objections to the defendant's request for permission to invite the third-party beneficiary, Ms. McKinney, to participate in the November 4, 2015 hearing. ECF No. 373. In his objections, plaintiff alleges that he has suffered harassment in the form of numerous transfers and that "this Court is allowing the harassment in bad faith." Id. at 1. He also objects to the court granting defendant's request to contact his family without his permission before he

---

[1] The third-party beneficiary.

2

could file an opposition.[2]  Id. at 2.  Plaintiff alleges that the court's actions show "sufficient grounds to disqualify the judge based on partiality and bias."  Id.  The court construes plaintiff's objections as a motion to recuse.

The Ninth Circuit has "held repeatedly that the challenged judge h[er]self should rule on the legal sufficiency of a recusal motion in the first instance."  United States v. Studley, 783 F.2d 934, 940 (9th Cir. 1986) (citing United States v. Azhocar, 581 F.2d 735, 738 (9th Cir. 1978) (collecting cases)).  "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein."  28 U.S.C. § 144.  "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  Under both recusal statutes, the substantive standard is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned."  Studley, 783 F.2d at 939 (quoting Mayes v. Leipziger, 729 F.2d 605, 607 (9th Cir. 1984) (internal quotations omitted)).

Plaintiff argues that the undersigned should be removed because she has shown bias against him through the orders she has issued and speculates that the allegedly unfair treatment is due to his race.  ECF No. 373 at 1-2.  Plaintiff's claims of bias arise out of nothing more than the undersigned's rulings in this case and "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  Liteky v. United States, 510 U.S. 540, 555 (1994).  Plaintiff's allegations of bias are entirely baseless and are founded on nothing more than speculation.  "Section 455 does not require the judge to accept all allegations by the moving party as true.  If a

---

[2] With respect to the order allowing defendant to invite Ms. McKinney to participate in the November 4, 2015 hearing, plaintiff has not cited, and the court is not aware of, any rule or law requiring defense counsel to obtain the permission of either the court or plaintiff prior to contacting Ms. McKinney.  However, counsel did seek the court's permission to invite Ms. McKinney to participate in the hearing.  In granting defendant's request, the court did not "order communication with [plaintiff's] mother," but allowed defendant's counsel to extend an invitation to participate in the hearing.  Ms. McKinney was not under any obligation to speak with counsel or participate in the hearing.

3

party could force recusal of a judge by factual allegations, the result would be a virtual 'open season' for recusal." United States v. Greenough, 782 F.2d 1556, 1558 (11th Cir. 1986) (citing Phillips v. Joint Legislative Comm., 637 F.2d 1014 (5th Cir. 1981)). "[A] judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation." Id.

Plaintiff's conclusory allegations, based on nothing more than speculation, fail to establish a reasonable question as to the undersigned's impartiality or that a bias or prejudice exists. The request for recusal will therefore be denied.

III.    Motion for Sanctions and Judicial Notice

Plaintiff asks the court to (1) sanction defendant for hindering his ability to prosecute this case, and (2) take judicial notice of two prison grievances and the record in Woods v. Carey, 06-cv-1857 GEB EFB.  ECF No. 360 at 1-2.

With respect to plaintiff's request for sanctions, there is no evidence before the court that defendant Cervantes had any involvement with the alleged deprivation of plaintiff's legal paperwork and therefore no grounds to issue sanctions.  Moreover, as addressed more fully in Section VI.C.1 below, plaintiff's lack of property appears to be a result of his recent transfers and not the result of any malicious intent.

With respect to the request to take judicial notice of two prison grievances and the record in Woods v. Carey, 06-cv-1857, plaintiff does not provide copies of the grievances or identify their location in the record nor does he identify any specific portions of the record in Woods v. Carey, 06-cv-1857, that he would like the court to take notice of, making it difficult for the court to determine what, if any relevance, the grievances and court record may have to this case.

For these reasons, plaintiff's motion for sanctions and judicial notice will be denied.

IV.    Motion for an Evidentiary Hearing

Plaintiff requests an evidentiary hearing regarding whether an agreement was reached at the August 20, 2015 settlement conference.  ECF No. 360 at 2-3.  Where the material terms of a settlement agreement and the parties assent to such terms is placed on the record, an evidentiary hearing to determine whether an agreement has been reached is unnecessary.  Doi v. Halekulani

4

Corp., 276 F.3d 1131, 1139-40 (9th Cir. 2002). The recollection of the judge conducting the settlement conference can also support a finding of an enforceable agreement without an evidentiary hearing. Lynch, Inc. v. SamataMason, Inc., 279 F.3d 487, 490-92 (7th Cir. 2002) (judge may rely on recollections to find enforceable agreement when agreement is not on record); see also Shah v. United States, 878 F.2d 1156, 1159 (9th Cir. 1989) (judge may rely on own notes and recollection of plea hearing and sentencing process to supplement record without an evidentiary hearing). In this case, both the undersigned's recollection and the record confirm the material terms of the agreement (ECF No. 368 [Transcript of August 20, 2015 settlement conference proceedings] at 2:17-4:11) and the parties' agreement to those terms (ECF No. 353; ECF No. 369 5:5-10), making an evidentiary hearing unnecessary. Plaintiff's motion is therefore denied.

V.   Motions for Copies and Appointment of Counsel

Plaintiff has also filed motions requesting the court appoint counsel and order the CDCR to return his legal property; provide him "copies of the case file of Woods v. Carey 04-cv-1225, LKK, GGH[;] the trial transcripts[;] Ninth Circuit decisions[;] and copies of Woods v. Carey, 06-cv-01857, GEB, EFB." ECF Nos. 350, 361.

In his first motion, plaintiff alleges that defendants are violating California Code of Regulations, title 15, § 3161 because they are allowing him to possess only one cubic foot of legal property for all of his active cases combined, rather than one cubic foot of property per active case. ECF No. 350 at 1. Section 3161 states that inmate legal property is "limited to the availability of space authorized by section 3190(b)[3] for personal property in the inmate's quarters/living area." Inmates may also "possess up to one cubic foot of legal materials/documents related to their active cases, in excess of the six cubic feet of allowable property in their assigned quarters/living area." Cal. Code Regs. tit. 15, § 3161. "Inmates may request the institution/facility store excess legal materials/documents related to their active cases(s) when such materials/documents exceed this one cubic foot additional allowance." Id.

---

[3] The space limit on inmate property is actually set forth in section 3190(d), which limits inmate property to six cubic feet. Cal. Code Regs. tit. 15, § 3190(d).

The regulation does not require plaintiff be permitted an additional cubic foot of property per active case and plaintiff's dissatisfaction with the regulation alone is not grounds to require CDCR to provide plaintiff with property in excess of the standard limits. To the extent plaintiff now alleges that his legal property has been lost (ECF No. 361 at 1), the court cannot order CDCR to produce to plaintiff something that it cannot locate. As for plaintiff's request for sanctions against defendant for his lost property, he does not provide any evidence that demonstrates the loss of his property was intentional or the result of defendant's actions. Plaintiff also request the Clerk of the Court to provide him with copies; however, the docket in this case alone has 370 entries and the court cannot accommodate such a request free of charge.

As a result of the alleged loss of his legal paperwork and limited library access, plaintiff requests appointment of counsel because he argues these conditions create exceptional circumstances entitling him to representation. ECF No. 350 at 2; ECF No. 361. The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases. Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989). In certain exceptional circumstances, the district court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1). Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).

"When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved.'" Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (quoting Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983)). The burden of demonstrating exceptional circumstances is on the plaintiff. Id. Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel. Plaintiff's lack of legal documents and limited access to the library do not warrant exceptional circumstances, and plaintiff has already demonstrated his ability to successfully represent himself at trial in this case. Additionally, as outlined below in Section VI, the undersigned is also recommending that the motion to enforce be granted and the case dismissed. For these reasons,

1  the motion for counsel will be denied.

2  VI.   Motion to Enforce Settlement Agreement

3      A.   Legal Standard

4  A district court has the inherent power to enforce a complete settlement agreement entered into while the litigation is pending before it. In re City of Equities Anaheim, Ltd., 22 F.3d 954, 957 (9th Cir. 1995); Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987). This enforcement power extends to oral agreements. Doi v. Halekulani Corp., 276 F.3d 1131, 1138 (9th Cir. 2002). The moving party has the burden of demonstrating that the parties formed a legally enforceable settlement agreement. In re Andreyev, 313 B.R. 302, 305 (B.A.P. 9th Cir. 2004) (citing 15A Am. Jur. 2d Compromise and Settlement § 57 (2000)).

"The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." Jeff D. v. Andrus, 899 F.2d 753, 759 (9th. Cir. 1989). Therefore, even though the underlying cause of action presented in this litigation is based upon a federal statute, this court applies California law regarding the formation and interpretation of contracts in determining whether a legally enforceable settlement agreement was reached. United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992); see also Harrop v. West. Airlines, Inc., 550 F.2d 1143, 1145 (9th Cir. 1977) (applying California law).

In California, oral settlement agreements made before the court and oral contracts are enforceable. Cal. Civ. Proc. Code § 664.6; Cal. Civ. Code § 1622. "The essential elements of a contract are: [1] parties capable of contracting; [2] the parties' consent; [3] a lawful object; and [4] sufficient cause or consideration." Lopez v. Charles Schwab & Co., Inc., 13 Cal. Rptr. 3d 544, 548 (Cal. Ct. App. 2004) (citing Cal. Civ. Code § 1550). "Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror." Id. (citing Cal. Civ. Code § 1565). The existence of mutual consent is determined by objective criteria; the "parties' outward manifestations must show that the parties all agreed 'upon the same thing in the same sense.'" Weddington Prod., Inc., v. Flick, 71 Cal. Rptr. 2d 265, 277 (Cal. Ct. App. 1998) (quoting Cal. Civ. Code § 1580).

7

B.     Facts

On August 20, 2015, the parties met before the undersigned to participate in a settlement conference. ECF No. 352. The settlement conference was successful, and after the parties reached an agreement regarding the terms of the settlement, those terms were placed on the record. Id.; ECF No. 368 at 2:11-3:6, 4:9-11. The terms of the agreement provided that plaintiff would dismiss the lawsuit and release "all originally named defendants from liability related to the matters at issue in the claims in exchange for a payment of $5,000 directly to [plaintiff's] mother[, Ms. McKinney]." ECF No. 368 at 2:18-22. The $5,000 payment included the punitive damages judgment previously entered against defendant Cervantes (id. at 2:23-25), and was subject to restitution (id. at 4:9-11). During the settlement discussions, plaintiff was provided a statement that showed his restitution balance was zero. Id. at 4:7-8. Payment of funds was to be made within 180 days after Ms. McKinney completed the payee paperwork necessary to process the payment. Id. at 3:6-10. The undersigned maintained jurisdiction of the case for purposes of enforcing the settlement. Id. at 3:16-17.

The court gave the parties thirty days from the date the written agreement was executed to file dispositional documents. Id. at 3:17-20. However, several weeks after the settlement conference, defendant filed a motion to enforce the settlement agreement, claiming that plaintiff was refusing to go forward with the agreement. ECF No. 353. In a sworn statement, counsel for defendant stated that he had a telephone conference with plaintiff on September 9, 2015, during which plaintiff stated that he would not sign the settlement agreement, stipulation for dismissal, or notice of satisfaction of judgment. ECF No. 353-1 at 19, ¶¶ 9-10. Plaintiff expressed to counsel that he no longer believed the terms of the agreement to be in his best interest because he had remembered evidence that he could not remember during the conference, and that he now wanted to proceed with trial. Id., ¶ 11. Plaintiff did not object to the written agreement on the grounds that it was not an accurate representation of the agreed upon terms, and confirmed that he knowingly entered into the agreement as stated on the record despite having the option to refuse settlement. Id. at 20, ¶ 13.

In his response to defendant's motion to enforce the settlement agreement, plaintiff does

8

not dispute any of the facts set forth by defendant or the terms of the contract. ECF No. 360. Plaintiff instead challenges the sufficiency of his consent and the consideration, and his challenges are largely consistent with counsel's representation of plaintiff's statements on September 9, 2015. ECF No. 360 at 1-2; ECF No. 369 at 5:14-19; Recording of November 4, 2015 hearing at 1:36:03-36:07, 1:38:29-39:21, 1:42:02-43:18. Specifically plaintiff argues that the settlement agreement should not be enforced because (1) his acceptance of the offer at the settlement conference was only tentative and the parties' intent was to be bound to the agreement only upon execution of a written agreement (ECF No. 360 at 1-2); (2) he did not have all the facts at the time he made the agreement, rendering his consent unintelligent and the amount agreed upon insufficient (id.; ECF No. 369 at 5:14-19, 6:21-7:1; Recording of November 4, 2015 hearing at 1:36:03-36:07, 1:38:29-39:21, 1:42:02-43:18); and (3) he was under duress (id. at 1:36:03-36:07, 1:42:02-43:18).

The court held hearings on October 14, 2015, and November 4, 2015, during which plaintiff was given an opportunity to further elaborate on his reasons for wanting to be released from the settlement agreement. ECF No. 369; ECF No. 370; Recording of November 4, 2015 hearing. Upon conclusion of the hearing on November 4, 2015, the court found that plaintiff had entered into a binding agreement and that he had done so knowingly and voluntarily. Recording of November 4, 2015 hearing at 1:43:40-44:07, 1:43:45-43:46. The basis for the undersigned's decision is set forth below.

C.   Consent

Under California law, consent must be free, mutual, and communicated by each party to the other. Cal. Civ. Code § 1565. In his response to defendant's motion to enforce, plaintiff argues that his consent was only tentative and that the parties did not intend to be bound to the agreement until a written agreement was executed. ECF No. 360 at 1-2. Neither party communicated to the court during the settlement conference that their acceptance of the agreed upon terms was tentative or that they did not intend the agreement to be final until a written agreement was signed. On the record, the stated purpose of the written settlement agreement was to memorialize the agreement, not to finalize it (ECF No. 368 at 2:11-14), and plaintiff

acknowledged during the October 14, 2015 hearing that he had in fact agreed to the terms of the settlement agreement on August 20, 2015[4] (ECF No. 369 at 5:5-10). The lack of a written agreement in this case does not does not invalidate the settlement agreement reached on August 20, 2015.

> Often, in cases where an oral settlement is placed on the record in the trial court, a written agreement will follow. If difficulties or unresolvable conflicts arise in drafting the written agreement, the oral settlement remains binding and enforceable under [California Civil Code] section 664.6.[5] Having orally agreed to settlement terms before the court, parties may not escape their obligations by refusing to sign a written agreement that conforms to the oral terms. The oral settlement, like any agreement, "imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."

Elyaoudayan v. Hoffman, Cal. Rptr. 2d 41, 47 (Cal. Ct. App. 2003) (quoting Restatement (Second) of Contracts § 205. The undersigned finds that the material terms of the settlement agreement, as placed on the record on August 20, 2015, were consented to by both parties with the intent that the oral agreement was binding and the written agreement was merely for the purpose of memorializing the oral agreement.

In light of plaintiff's consent to the material terms of the agreement, the agreement should be enforced unless plaintiff can show that his apparent consent was not real or free. An apparent consent is not real or free when obtained through duress or mistake, Cal. Civ. Code § 1567, but such apparent consent is not absolutely void, Cal. Civ. Code § 1566.

////

---

[4]
> THE COURT: You acknowledge, as I think you have to, that you agreed on August 20 to dismiss your lawsuit and all related claims, known and unknown, against these defendants related to the matters at issue in your complaint in exchange for a payment of $5,000 to your mother, correct?
>
> MR. WOODS: Yes, ma'am.

ECF No. 369 at 5:5-10.

[5] "If parties to pending litigation stipulate, . . . orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." Cal. Civ. Code § 664.6.

1. Duress

At the hearing on November 4, 2015, plaintiff asserted for the first time that he should not be required to go through with the settlement agreement because he was under duress at the time he made the agreement. Recording of November 4, 2015 hearing at 1:36:09-36:07, 1:42:02-43:18. When asked to explain what he meant by duress, plaintiff explained that he had been in the same clothes for the past ten days, had no shoes, had been denied a kosher meal for months, had been transferred to numerous institutions within a short period of time, was not in possession of his property, and had been placed in administrative segregation for an unspecified period of time. Id.

Duress is defined as:

> 1. Unlawful confinement of the person of the party, or of the husband or wife of such party, or of an ancestor, descendant, or adopted child of such party, husband, or wife;
> 2. Unlawful detention of the property of any such person; or,
> 3. Confinement of such person, lawful in form, but fraudulently obtained, or fraudulently made unjustly harrassing[6] or oppressive.

Cal. Civ. Code § 1569. Plaintiff appears to argue that he was under the second and third forms of duress.

Plaintiff's most persistent complaints appear to be that he was transferred numerous times within a short period of time and that he was deprived of his property. Since the delay in plaintiff receiving his property appears to be tied to his transfers, the appropriateness of plaintiff's transfers will be addressed first. Plaintiff alleges that he was transferred seven times between June 2, 2015, and August 13, 2015. ECF No. 373 at 2; Recording of November 4, 2015 hearing at 1:42:22-42:32. The bed assignment sheet recently provided by plaintiff shows that on June 2, 2015, plaintiff was transferred from administrative segregation at San Quentin State Prison (SQ) to the California Correctional Center (CCC) in Susanville. ECF No. 373 at 4. The next day he was transferred to another bed within the CCC facility. Id. After approximately one month, plaintiff was transferred from CCC to Deuel Vocational Institution (DVI) in Tracy. Id. The next

---

[6] So in chaptered copy.

day he was transferred from DVI to the California Institution for Men (CIM) in Chino. Id. Ten days later, on July 13, 2015, plaintiff was transferred to California State Prison, Centinela (CEN) in Imperial. Id. Plaintiff was at CEN for about a month before being transferred to North Kern State Prison (NKSP) in Delano on August 12, 2015. Id. The following day, plaintiff was transferred to California State Prison, Sacramento (SAC). Id. After the settlement conference on August 20, 2015, plaintiff was transferred back to CEN. Id.

Based on this evidence, the court finds that plaintiff was subject not to fraudulently harassing confinement, but to unfortunate timing. According to the Inmate Locator website operated by the CDCR, plaintiff is still incarcerated at CEN.[7] This indicates that the original transfer to CEN on July 13, 2015, was intended to be a permanent transfer. Given the short stays at DVI and CIM, it appears that these transfers were intended to be layover stops from CCC to CEN, facilities which are located at nearly opposite ends of the state. Plaintiff's subsequent transfers on August 12, 2015, and August 13, 2015, appear to be for the purpose of transporting plaintiff to the settlement conference on August 20, 2015. The settlement conference in this case was originally scheduled for January 7, 2016, but, in an effort to prevent additional delay in the resolution of this case, was moved up to August 20, 2015, when that date became available on the court's calendar. ECF No. 348. Unfortunately, this meant that plaintiff had to be temporarily transferred to Sacramento for the conference even though he had only recently arrived at CEN.

Prisoners have no constitutional right to a particular housing location, Meachum v. Fano, 427 U.S. 215, 224-25 (1976), and given the circumstances surrounding the transfers, the court does not find that they made plaintiff's confinement unjustly harassing or oppressive. August 20, 2015, did not become available for the settlement conference in this case until after plaintiff had already been transferred to CEN. As a result, the order directing CDCR to bring plaintiff to court on August 20, 2015, did not issue until approximately two weeks after the transfer. ECF No. 348. There was no way for defendant or CDCR to anticipate that plaintiff would have to be transferred

---

[7] See Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned); see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.").

to Sacramento so soon after his transfer to CEN.

With respect to the claim that plaintiff's property was unlawfully detained, the relevant period during which plaintiff alleges his property was detained, June 2, 2015 through August 20, 2015 (ECF No. 360 at 1), appears to coincide with plaintiff's transfers between different prisons (ECF No. 373 at 4). This court is regularly notified by inmate plaintiffs of delays in receiving their property after a transfer to a different institution. In this instance it appears that before plaintiff's property could catch up to him at CEN, he was transferred to SAC for the settlement conference. Under CDCR policy, when inmates are out-to-court and not scheduled to return the same day, their property is stored at the facility until their return, it is not transported with them. CDCR Department Operations Manual § 54030.13.2. The evidence does not support a finding that plaintiff's property was unlawfully detained or detained for the purpose of harassing plaintiff.

As for plaintiff's other claims regarding his clothing, kosher meals, and placement in administrative segregation, there is no evidence that these conditions were imposed on plaintiff for the purpose of harassing him, that defendant had anything to do with these conditions, or that they were anything more than an unfortunate consequence of his transfers. While the court sympathizes with plaintiff's frustration, it does not find that these conditions were the result of deliberate harassment.

Based on the evidence before the court, and taking into consideration the lengthy discussion the undersigned had with plaintiff at the settlement conference regarding his conditions and what it means to settle a case (ECF No. 369 at 5:22-6:15; Recording of November 4, 2015 hearing at 1:40:48-41:34, 1:43:23-39), the undersigned finds that plaintiff was not under duress at the time he entered into the settlement agreement.

2.  Lack of Factual Knowledge

Plaintiff also argues that he should be allowed to back out of the settlement agreement because he did not have all the facts available to him at the time he entered the agreement. ECF No. 360 1-2; ECF No.369 at 5:14-19, 6:21-7:1; Recording of November 4, 2015 hearing at 1:38:29-39:21, 1:42:02-43:18, 1:43:40-44:07. In other words, plaintiff is arguing that his consent was not real or free because of his mistake of fact.

13

California law defines mistake of fact as follows:

> Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in:
>
> 1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or,
>
> 2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed.

Cal. Civ. Code § 1577.  Where a party seeks to rescind a contract based on unilateral mistake, the party must show that "(1) [he] made a mistake regarding a basic assumption upon which [he] made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to [him]; (3) [he] does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable." Donovan v. RRL Corp., 27 P.3d 702, 716 (Cal. 2001).

Here, plaintiff alleges that his forgetfulness regarding certain facts was the cause of his mistake in accepting the agreement.  He claims that he forgot that he had evidence that defendant Cervantes is a "habitual liar" and that former defendant Carey threatened him and committed perjury.  ECF No. 360 at 2-4.  Neither of these forgotten "facts" is material to the agreement. Carey has been dismissed from the case and a major premise of plaintiff's allegations against Cervantes is that Cervantes acted in a deceitful manner when handling plaintiff's grievances. Neither supposedly forgotten fact revives the claims against Carey nor changes the claims against Cervantes.  At most these matters potentially impact witness credibility and plaintiff's opinion of his chances of success at trial.  However, even if the court were to consider these facts material to the contract, the agreement would still be enforceable because plaintiff can, at best, establish only the first of the four factors required to show that he is entitled to rescission based on his unilateral mistake.

Given plaintiff's claim that he would not have made the agreement he did if he had remembered all the facts, the court will assume for purposes of this analysis that the facts plaintiff forgot constitute a basic assumption on which he made the contract.  However, the court cannot

14

find that the mistake had a material effect on the agreement that is adverse to plaintiff.  "In establishing a material mistake regarding a basic assumption of the contract, [plaintiff] must show that the resulting imbalance in the agreed exchange is so severe that it would be unfair to require [him] to perform."  Donovan, 27 P.3d at 282 (citation omitted).  This is typically established by showing that the exchange is both less desirable for the party seeking rescission and more favorable to the other party. Id.  The court does not find such an imbalance here.  The forgotten facts do not impact the amount of money plaintiff's mother is to receive under the agreement.  There is also no evidence that the facts plaintiff has forgotten will have any effect on the value of his case.  At most, the facts put forth would increase plaintiff's likelihood of success at trial, but even that possibility is highly speculative.  Though these facts clearly impact plaintiff's opinion about his chances of success and the value of his case, plaintiff's change of opinion does not render the agreement unfair.  For these same reasons, the mistake does not render enforcement of the agreement unconscionable.

Finally, plaintiff cannot establish that he did not bear the risk of mistake.  "Where parties are aware at the time the contract is entered into that a doubt exists in regard to a certain matter and contract on that assumption, the risk of the existence of the doubtful matter is assumed as an element of the bargain."  Guthrie v. Times-Mirror Co., 124 Cal. Rptr. 577, 581 (Cal. Ct. App. 1975) (internal citations and quotation marks omitted).  In other words, "[a] contracting party bears the risk of a mistake . . . when the party is aware of having only limited knowledge of the facts relating to the mistake but treats this limited knowledge as sufficient."  Grenall v. United of Omaha Life Ins. Co., 80 Cal. Rptr. 3d 609, 613 (Cal. Ct. App. 2008) (citing Donovan, 27 P.3d at 825). Plaintiff has made clear that at the time he was participating in the settlement conference he felt that he could not remember all of the facts.  ECF No. 360 1-2; ECF 369 at 5:14-19; Recording of November 4, 2015 hearing at 1:38:29-39:21.  However, despite believing that he could not remember all the information he believed to be relevant to his case, and after discussing the issue and what it meant to settle a case with the undersigned at some length (ECF No. 369 at 5:22-6:15; Recording of November 4, 2015 hearing at 1:40:48-41:34, 1:43:23-39), plaintiff chose to proceed with the settlement conference and agreed to a settlement with defendant.  In light of these

circumstances, the undersigned finds that plaintiff knowingly assumed the risk of proceeding without the facts he has now remembered, and therefore assumed the risk of mistake.

For these reasons, the undersigned finds that plaintiff is not entitled to rescission of the agreement based on mistake of fact.

### D. Sufficiency of Consideration

Good consideration is defined as "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, . . . as an inducement to the promisor, is a good consideration for a promise." Cal. Civ. Code § 1605. In terms relevant to this case, good consideration would be a benefit given to plaintiff that he was not otherwise entitled to in exchange for some action by plaintiff. Here, defendant promised plaintiff $5,000, payable to plaintiff's mother, in exchange for plaintiff's dismissal of his lawsuit.

"[O]rdinarily, a court will not weigh the sufficiency of the consideration once it has found it to be of some value." Walters v. Calderon, 102 Cal. Rptr. 89, 97 (Cal. Ct. App. 1972) (citing In re Freeman's Estate, 48 Cal. Rptr. 1, 3 (Cal. Ct. App. 1965)); Cal. Civ. Code § 1605. "[A]ll the law requires for sufficient consideration is the proverbial 'peppercorn.'" San Diego City Firefighters, Local 145 v. Board of Admin. of San Diego City Emp. Ret. Sys., 141 Cal. Rptr. 3d 860, 880 (Cal. Ct. App. 2012). "The slightest consideration is sufficient to support the most onerous obligation; the inadequacy, as has been well said, is for the parties to consider at the time of making the agreement, and not for the court when it is sought to be enforced." Rice v. Brown, 261 P.2d 565, 582 (Cal. Ct. App. 1953) (citation and internal quotation marks omitted).

The court finds that the agreement to pay plaintiff's mother $5,000 in exchange for plaintiff's dismissal of this case held some value to plaintiff. Plaintiff's change of heart regarding how much he was willing to accept to dismiss his case does not change the fact that at the time he made the agreement he felt $5,000 was sufficient. The court finds the agreement supported by good consideration.

### E. Conclusion

The undersigned finds that plaintiff's consent was voluntary and knowing and defendant's motion to enforce the settlement agreement should therefore be granted.

VII. Conclusion

Plaintiff's objections (ECF No. 373), construed as a motion to recuse, is denied because plaintiff's allegations of bias are based solely on speculation and the undersigned's rulings in this case. Plaintiff's motion for sanctions and judicial notice (ECF No. 360) is denied because plaintiff has not provided evidence of sanctionable conduct or identified the specific documents he wishes the court to take judicial notice of. The motion for an evidentiary hearing (ECF No. 360) is denied because both the terms of the settlement agreement and the parties' consent to the terms are on the record, and the undersigned may rely on her recollection of the settlement conference, making an evidentiary hearing unnecessary. Plaintiff's motions for copies and appointment of counsel (ECF Nos. 350, 361) are denied because there is no evidence that plaintiff's property is being inappropriately limited, the court cannot accommodate his request for copies, and the circumstances alleged are not exceptional such that they warrant appointment of counsel, especially in light of the undersigned's recommendation that the case be dismissed. Finally, defendant's motion to enforce the settlement agreement should be granted because plaintiff consented to the agreement and the undersigned finds that plaintiff's consent was both knowing and voluntary.

IT IS HEREBY ORDERED that:

1. Plaintiff's motion to recuse (ECF No. 373) is denied.

2. Plaintiff's motion for sanctions and judicial notice (ECF No. 360) is denied.

3. Plaintiff's motion for an evidentiary hearing (ECF No. 360) is denied.

4. Plaintiff's motions for copies and appointment of counsel (ECF Nos. 350, 361) are denied.

IT IS FURTHER RECOMMENDED that:

1. Defendant's motion to enforce the settlement agreement (ECF No. 353) be granted.

2. Within 180 days of an order adopting these findings and recommendations, the California Department of Corrections and Rehabilitation shall pay $5,000.00 for the benefit of plaintiff's mother, Mildred McKinney, subject to any restitution owed by plaintiff, to the Clerk of the Court. The check should be made out to the Clerk of the Court and mailed to 501 I Street,

1  Room 4-200, Sacramento, CA 95814.  The Clerk shall hold the funds in the registry account until
2  ordered by the court to disburse the funds, upon the resolution of any appeal or the expiration of
3  the time to appeal.

4      3.  This case be dismissed with prejudice.

5      4.  Magistrate Judge Allison Claire shall retain jurisdiction of this case for purposes of
6  enforcement of the settlement agreement.

7      These findings and recommendations are submitted to the United States District Judge
8  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
9  after being served with these findings and recommendations, any party may file written
10 objections with the court and serve a copy on all parties.  Such a document should be captioned
11 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
12 objections shall be served and filed within fourteen days after service of the objections.  The
13 parties are advised that failure to file objections within the specified time may waive the right to
14 appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

15 DATED: November 17, 2015

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE